By the Court—Moncrief, J.
This action was based solely upon a claim for damages caused by the alleged carelessness and negligence of the defendants, in not keeping in repair the wharf and pier upon which the accident happened.
There is no allegation or proof that the wharf was not properly constructed; on the contrary, there is evidence tending to show that the original structure was good, and proper for the uses intended.
The plaintiff in such a case, before he can recover, must introduce evidence from which it may distinctly appear:
1. That the plaintiff did not essentially contribute towards the accident by his own carelessness, negligence and want of reasonable skill.
2. That the defendants were guilty of negligence in not repairing the wharf before the accident happened.
The law recognizes “accidental injuries,” for which there is no redress, and it is a mistake to suppose that every one who suffers damage by accident, can, as a matter of course, make somebody pay for it. (2 Greenl. on Ev., 9 ed., §§ 222, 243.)
If the defendants are liable in this case, it is only ón the ground of negligence in not repairing the wharf prior to the accident, and not unless upon affirmative proof of such negligence as ordinary and reasonable care would have avoided.
The corporation of this city are not to be held to such miraculous foresight, nor superhuman prudence, as will enable it to discover the earliest moment that the sun and rain began to weaken one plank, by decay in its numerous docks, nor to know which plank of its many thousand that one may be. That need of repairs, (if such it can be called,) which reasonable diligence and care cannot discover, it will not be called negligence to overlook.
The defendants offered no evidence; but the plaintiff showed that the coach was the very large one used by the St. Nicholas Hotel, far heavier than the ordinary hack; that it had some passengers and trunks, and that the trunks in question, with others, *502 were upon the top of the coach without any fastening whatever; that they were two or three feet high, protected only by a slight railing some six inches high; that the coach drove over the plank to the boat, let out some six or eight passengers with their trunks, and then, in attempting to turn its wheels, which could not pass under it, became cramped and got straight across the dock, and in backing in this cramped condition the hind wheel was pressed lengthwise upon a plank, and went through it; as the coach swung the trunks “ went off” into the water; that the coachman had just driven over the very same part of the wharf with a much heavier load, and saw no crack or hole in it; that a policeman was stationed there that morning and three or four days previously, and was there often before the accident, and knew of no defect; that the plank was not concealed by dirt, and that there was neither crack nor hole to warn the most cautious until it broke; that no accident had happened there, and no warning whatever had been given; that; the plank was some eight inches wide, two and half or three inches thick, and when taken up after the accident presented some indications of rottenness or decay; and it clearly appears that, until the moment of the accident, there never had been anything to advise the most vigilant of necessity to repair.
The accident, notice of decay and the occasion to repair, were simultaneous facts.
No practicable degree of skill or care could have foreseen or discovered that the plank had decayed until the happening of the accident. At what time should an examination take place, and how frequently shall it be renewed ? Must the watch and examination of each plank and every stone laid upon the piers and in the streets of the city of New York be constant and unremitting? (18 N. Y. R., 536, 537.)
Many of the cases cited by the counsel for the appellant were against common carriers, and' are not applicable to this action, except in some instances to furnish reasoning against the proposition .urged by him. In Christie v. Griggs, (2 Camp., 80,) Mansfield, Ch. J., sajrs: “ If the axle-tree was sound as far as human eye could discover, the defendant was not liable.”
In 9 Bingham, 457, a coach proprietor, a common carrier, is held liable for all defects in his vehicle which can be seen (and should *503 be avoided) at the time of the construction, as well as for such as may be found afterwards on investigation. The axle-tree contained a defect which could be seen at the time it was used in making the coach, and could have been detected by taking off the wood work.
1 Carrington & Payne, 636, lays down the rule “ that a count upon an undertaking to carry a passenger safely cannot be supported without proof of actual negligence of the defendant. (Ingalls v. Bills et al, 9 Met., 1—15.)
In Bailey v. The Mayor, (3 Hill, 541; affirmed, 2 Denio, 433,) the action was for want of proper care and skill in the construction of the dam. Abundant evidence was given tending to show that it was not properly constructed for the uses intended.
In 5 Sandford, 289, the action was for negligence of the defendants in not repairing a public street. It appeared in evidence that there had been'an excavation made in the street; that it was not protected or indicated by a light to warn passers-by. The plaintiff at night met with the accident. Proof of negligence was given, though the case turned upon the question of liability of agents of the defendants, and was defended mainly upon that ground.
In 3 Comstock, 464, the action was for negligence in constructing a culvert. Evidence was given, and the Referee found that the construction was insufficient.
In 3 Hill, 612, notice of the insufficiency of the sewer and of the necessity to repair, was given before the injury.
In 23 Wendell, 446, the defendant had constructed a bridge over which, as a part of the public highway, the public had the right to pass, and were constantly passing, and the bridge was held to be a nuisance, and the defendant to be liable for any damage resulting from accidents happening by reason of the defendant’s neglect at all times to keep that part of the road as free from liability to accident as if such bridge had not been constructed. The defendant was a wrong-doer, and became an insurer to the public that the bridge should at all times be safe and free from liability to occasion damage. In such a case, therefore, proof of the accident throws the onus upon the defendant to excuse his prima facie negligence. The same principle was properly held in this Court, (affirmed, 18 N Y. R., 84,) in the case of Congreve v. Morgan. (5 Duer, 495.)
*504 The defendants in the case under consideration were engaged, in the legal use of their own property, and no nuisance existed. The wharf was not shown to be out of repair or unfit for use, and no inference of omission or neglect of duty could arise.
If a tenant covenant to keep the house in repair, and it becomes ruinous by accident, the covenant will not become broken till after a convenient time for its repair has elapsed. (2 Shep. Touch., 173, ch. 7.) In the case of Mayor of Lyme Regis v. Henly, cited by the -counsel for the appellant, (plaintiff,) it was distinctly held, that in order to make the corporation liable, four things must appear, and among them, 3d. That the place in question was out of repair. (5 Sandf., 315, 21, 3.)
There was no conflict of evidence. The facts were indisputable. An accident happpened by which it was discovered that a plank had previously in part become decayed and rotten. The plaintiff claimed that the fact of decay was prima facie evidence of negligence of the defendants. In my opinion the evidence would not have warranted the jury in finding the defendants guilty of negligence or carelessness; the action, therefore, could not be sustained, and the Court properly dismissed the complaint. Judgment should be entered for the defendants, with costs, &c.
Pierrepont, J., concurred.